742 So.2d 268 (1997)
In re the ESTATE OF Virginia Sutton SALLEY, an incapacitated person.
Phil C. Gallagher, Appellants,
v.
Comprehensive Personal Care Services, Inc., Appellee.
No. 96-2914.
District Court of Appeal of Florida, Third District.
September 3, 1997.
*269 Swan, Sheppard & Swan, Coral Gables; Timothy Carl Blake and Roy Wasson, Miami, for Appellants.
Steel, Hector & Davis and Clay Craig, Miami, for Appellee.
Before NESBITT, LEVY and GREEN, JJ.
NESBITT, Judge.
A pre-need guardian appeals an order appointing Comprehensive Personal Care Services, Inc. (Comprehensive) as guardian of the person and property of Virginia Sutton Salley, an incapacitated person. For the following reasons, we reverse with directions.
On August 22, 1996, Richard Oswald filed petitions in the lower court seeking a determination as to the capacity of his aunt, Ms. Salley, appointment of an emergency temporary guardian, and ultimately appointment of a plenary guardian. The probate court entered, among other orders, an order on August 27 appointing Comprehensive emergency temporary guardian. That same day, Ms. Salley discussed the proceedings with a family friend, Phil C. Gallagher.
A lawyer referred by Mr. Gallagher, Timothy Carl Blake, appellant's counsel in this proceeding, met with Ms. Salley the following day. She executed a written declaration on August 28 naming Phil C. Gallagher to be guardian of her person as well as her property, pursuant to section 744.3045, Florida Statutes (1995). By agreed order, Mr. Gallagher was substituted for Comprehensive as emergency temporary guardian. On September 9 and 10, members of the examining committee, appointed by the court pursuant to the statutory scheme, evaluated Ms. Salley. Two members of the examining committee reported that Ms. Salley should be able to provide input on matters affecting her social environment. The adjudicatory hearing on Mr. Oswald's petition took place on September 19, 1996.
At that hearing the court, consistent with the examining committee's findings and recommendations, found Ms. Salley to be totally incapacitated due to Alzheimer's disease and in need of a plenary guardian. The court was then faced with two competing petitions for the appointment of Ms. Salley's guardians. Mr. Oswald's petition sought appointment of Comprehensive as guardian of Ms. Salley's person and property. Mr. Gallagher's petition, on the other hand, asked that he be appointed guardian of Ms. Salley's person (in which he agreed to serve without compensation) and further nominated SunTrust Bank to be the appointed and qualified guardian of Ms. Salley's property.
At the conclusion of the hearing, the trial court entered orders finding Ms. Salley totally incapacitated and appointing Comprehensive the guardian of her person, as well as her property. The appellants only claim error with respect to the lower court's appointment of Comprehensive as plenary guardian and do not dispute the trial court's finding as to Ms. Salley's incapacity.
The trial court's reasoning for preferring Comprehensive over Gallagher or SunTrust Bank was Ms. Salley's family's resistance to Mr. Gallagher's appointment. *270 This resistance was based on the generalized concern that Mr. Gallagher would be too busy to handle the responsibilities attendant to being a guardian. No evidence, facts, or data, however, were introduced to support this contention. Consequently, the mere fact of the family's resistance apparently persuaded the court to select Comprehensive over the declared preference of Ms. Salley.
In 1989, the legislature amended the Guardianship Law and quite laudably declared that "it is the purpose of this act to promote the public welfare by establishing a system that permits incapacitated persons to participate as fully as possible in all decisions affecting them...." § 744.1012, Fla. Stat. (1995). The act is to be liberally construed to accomplish its remedial purpose. Id. It is against this policy backdrop that we decide the present case.
The parties disagree about the validity and effect that should be given to the preneed declaration executed by Ms. Salley. The statute provides that such a declaration may be executed by a "competent" adult. § 744.3045(1), Fla. Stat. (1995). Mr. Oswald and Comprehensive contend that Ms. Salley's competence on the day that she signed the declaration is in doubt given the fact that she signed the declaration some twenty-two days before the court determined she was incapacitated. Gallagher, in turn, points out that a person is presumed competent until an adjudication of incompetence is rendered. See Baskin v. Sherburne, 520 So.2d 103 (Fla. 2d DCA 1988).
The resolution of the question in such finite terms is entirely unnecessary. Even before the 1989 adoption of the legislative policy referred to earlier, section 744.312(3)(a) of the Florida Guardianship Law required the court to "consider the wishes expressed by the incompetent as to who shall be appointed guardian." Hence, it appears that the trial court, incorrectly, was more interested in placating unsubstantiated family concerns than honoring the wishes of the incapacitated person. Consequently, it was plain error for the court to deny Gallagher's petition to become appointed guardian of the person of Ms. Salley.
Next, we discuss Ms. Salley's preference and the court's actual appointment of a guardian of her property. The ward preferred Mr. Gallagher to serve as both guardian of her person and property. Mr. Gallagher, however, did not seek appointment as guardian of her property but nominated SunTrust Bank instead. The trial court appointed Comprehensive guardian of her property.
The distinctions between a guardian of one's person and a guardian of one's property are often blurred. We suppose this is because in the great majority of instances an individual, be it a close family member or friend, qualifies and is willing to serve in both capacities. The primary function of a guardian of the person is to become responsible for and ensure that one's ward is humanely treated and cared for in circumstances consistent with their lifestyle and the financial ability of their estate to sustain such a lifestyle. Even where a ward is destitute, it is nonetheless the responsibility of the guardian of the person to see that the ward is placed in a charitable facility and that humane care is provided for the ward within the facility's ability.
A guardian of one's property has the responsibility to marshal and inventory the property and file an annual accounting, investing and reinvesting the ward's estate so as to sustain the ward according to their needs. Nonetheless, the guardian of the property should invest and manage the ward's property so as to enhance it and maximize the potential for distribution to: a) the ward's estate; and b) upon her demise, to her beneficiaries or heirs at law.
Adverting to the case at hand, we can find no statute or case law which dictates what course of action should be *271 taken by the probate judge in such cases. Here, Ms. Salley trusted her longtime friend enough to want him to be her plenary guardian. Because such trust and confidence was reposed, we believe that it carries with it the implied authority for the person so designated, although unwilling to serve, to nominate a guardian of the property. Such a decision seems to be the only commonsense, practical, and reasonable way to honor the ward's intent in the selection of a guardian. Where a ward's preference as to the appointment of a guardian is capable of being known, that intent is the polestar to guide probate judges in the appointment of their guardians. A ward's nominee, of course, may be rejected when unfit or unsuitable, or for other like reasons.
Had the pre-need declaration been silent with respect to the guardian of the property, then the probate court might have looked at the ward's last will and testament to ascertain who she had appointed as her personal representative. The trial court may also hear testimony from the ward's financial advisors or friends, or others who knew of her desires in the selection and the appointment of her guardians. These suggestions are illustrative and in no way exclusive of the objective criteria that a probate court may look to in selecting a suitable guardian of the property in such a case. Nonetheless, because there may be real and substantial reasons why family members or other interested parties may have genuine objections to the appointment of such a nominee, notice should be provided to all interested parties and they should be given an opportunity to be heard before the probate court makes its final determination.
In the present case, Gallagher did nominate SunTrust Bank, which showed good judgment given the complexity and size of Ms. Salley's assets. At the hearing on the petition for the appointment of a guardian, there were no objections voiced to the appointment and qualifications of SunTrust Bank. Consequently, we believe that the need for further proceedings, suggested, is unnecessary in the present case.
As we recently noted in In re Estate of Montanez, 687 So.2d 943 (Fla. 3d DCA 1997), entities like Comprehensive were created primarily to "serve as a guardian of last resort." Here, the court was presented a qualified person who is a family friend, willing to serve without compensation. This individual was the expressed preference of the ward herself. Under these circumstances, given the purpose of the act, we believe it was error for the court to appoint Comprehensive as guardian of Ms. Salley's property over SunTrust.
On remand, the lower court is directed to enter an order appointing and qualifying Philip C. Gallagher as guardian of Ms. Salley's person, and SunTrust Bank as guardian of her property.
Reversed and remanded.